Case No. 17-7100 Rachel DeBorah's feature Fraenkel, individually, as personal representative of the estate of Yehud Naftali Fraenkel, and as the natural guardian of plaintiffs A. H. H. F., A. L. F., N. E. F., and S. R. F. et al. appellants, v. Islamic Republic of Iran, Ministry of Foreign Affairs et al., and substitution for the appellants, Mr. Philip DeWeer and Miki Skouraie. Mr. DeWeer. Good morning. Good morning, Your Honors. May it please the Court, Robert Tolchin for the appellants. First of all, I want to thank the, it may sound strange, but I want to thank the Georgetown Law Clinic for taking on as amicus to represent the interests of the decision. It's an amazing academic opportunity, but to me, we shouldn't lose sight that this isn't an academic exercise. This isn't a lawsuit to make a statement. It's not only to obtain justice for the plaintiffs and to have a determination from the court of what happened, but there's actually a very practical impact, which is that part of the judgment that we've obtained actually is collectible. A lot of people think, why are you bringing these cases? It's just a symbolic act, but because of the existence of the punitives are not collectible. The compensatory is. Right, and that's the point I'm coming up to, that amicus talks about this is a $55.1 million judgment. As a practical matter, the punitives are symbolic. The compensatories are not. And there is this victim's fund that was created with the impossible acronym USVSST, which is funded by fines and forfeited money and sanctions for people who wrongfully do business with Iran. Part of the compensatory damages, you can't collect either. No, that's not so. The compensatory damages. Against the father? No, and anyone who has a judgment, you don't mean against the father, you mean in favor of the father. In favor, I'm sorry. Yes, they're collectible. The way the statute works. I thought he could only, he was not a US citizen, could only recover under Israeli law. That's correct, but his judgment nevertheless is under the. He didn't recover under FISA. But he does recover under FISA. What gives him access to this court is the Foreign Sovereign Immunities Act. The case I would point you to that is the Seventh Circuit's decision in Leibovitz where exactly that issue came up. As long as somebody in the picture, the victim or the family member seeking salatium damages is a US citizen, then an action can be maintained. While I'm on that, his right to recover was dependent upon Israeli law. The measure of his damages was. The damages. Right. And you haven't made any argument that the district court misconstrued Israeli law. So the only thing we're arguing about is we can exclude the father, the million dollars that was awarded to the father. No. I don't contend that the district court made a error of determining Israeli law. I contend that the district court's damages awards were insufficient. And the case law that the court followed finds no substantial deviation between Israeli law of damages in this type of a case and the FSIA damages in this type of a case. Which is why typically when we have these cases with an Israeli parent or a parent of some other citizenship and American citizens, the award to the Israeli parent is typically in lockstep with the award to the American parents. And Leibovitz, that was exactly the issue in Leibovitz that was resolved there. The point I'm trying to start off with is it actually matters very much what these compensatory damages are. I know we briefed the punitive damages. I'm not going to talk about them. I acknowledge they're symbolic. I think they should have been higher, but I'm not going to dwell on that. What we're keenly looking to is these compensatory damages, which in the end of the day go into a pool and that victim's fund is prorated. The distributions are prorated against the other 3,000 people who have made claims to the fund. And all those 3,000 people have received their judgments in accordance with that Heiser standard. There are precious few deviations from that. Now that's your weakest argument, isn't it? I mean, that the district court that just called you here should have followed Heiser. She's not bound to do that. Heiser is the decision of one court. To the extent it's persuasive, follow it. But there's certainly no requirement that she find it. And in fact, Heiser itself acknowledges that with these salation damages, they're highly discretionary and subjective. This was the fifth error of law that I was going to talk about. I was going to talk about four more. But if you want to start, we can start about the end of the list. You're correct. The judge could use some other method to reach the judgment. Heiser provides a methodology that's well thought out and widely accepted and one that I think would be wise to follow it. But if the district judge had an alternative methodology, I would hear it. The problem that we have with the judge's decision is she doesn't have a methodology. You can scour her decision and scour her decision on re-argument backwards and forwards. You will not find how she reached these numbers. She talks about the liability. She talks about some extraneous facts, which I'm going to tell you she shouldn't have been talking about. And then she just says, and therefore I award. She doesn't say – she doesn't engage in any looking at what's the past damage, what's the future damage. Well, actually she does point to a couple of factors which you disagree with. I challenge you, Your Honor, to say what those factors are. She doesn't talk about any factors. What are your factors? Put aside Heiser for a moment. Wait, now I'm confused. There are a couple of factors that she's relying on that I thought you were suggesting were inappropriate. She talks about some factors, but they're not factors that have to do with damages. She doesn't say, okay, I've looked at it. This person went through 18 days of hell while their kid's fate was unknown. I thought she departed down from Heiser, if you want to put it that way, on assumption of risk and on nationality. Okay, we're drawing – I understand your argument that she shouldn't have done that. We're saying the same thing. So assumption of risk. Let's come back to it. That's not a damage factor. Right. Assumption of risk is a liability factor. But she used it. Isn't your argument that she used it improperly to reduce damages here? Correct. Correct. It was not like she said, okay, this person, I'm going to give them $50,000 a day for the past and $10,000 a day for the future, and let's look at their life expectancy and project it out, maybe discount to present value, and that's how I'm going to come to a number. She didn't do any of that. She just – she said, well, these people lived in a dangerous neighborhood, and therefore I give them $1 million. That's not a methodology, Judge Edwards, for calculating damages. I wasn't suggesting it was a methodology. You're snapping at me when I'm trying to get you on the points that we may be equally concerned with. So let's come back to the first point that I was going to discuss today. Judge Collier took – she created categories. She said that – she started talking about whether the plaintiff is a U.S. citizen who goes abroad to work or is the plaintiff a U.S. citizen and a dual citizen of some other country who lives overseas, and therefore based on being a dual citizen of another country, she says you don't get as much as a U.S. citizen who is not a dual citizen residing in another country but merely there for business. And as I recall, she was comparing it to Gates. She was comparing it to Gates, and it's an awful comparison because Gates was a military contractor who went into an absolute war zone, which was extraordinarily high risk. Baghdad in 2004 was a hotbed of terrorism. They had just burned and hung those Blackwater contractors alive. It was all over the news. It was on the State Department's intense warning list for stay away from this place. It's dangerous. And Judge Collier made it look like, well, they were just some American contractors off working overseas. So let's assume that you have the courts here in attention with respect to your claims about assuming the risk and citizenship being irrelevant. Okay. All right. So we're still back to a situation in which a district court judge has great discretion to make the determination. Yes, there's one more thing. Let's also assume that we don't think you're on great ground in saying that HISA creates the framework which a court is obliged to follow. So what's the framework? So what's a district court judge supposed to do in a case like this? The district judge should conduct a damages analysis, like any other case, where a process is gone through to calculate what are these people's actual damages. Now, there's a conundrum. This isn't like you lost an arm and as a result of losing an arm you can't work and then you can take your lost wages and, you know, come through some sort of a mathematical process. When you're talking about salatium, you know, what is this nightmare worth to a person? What is the value of a mother losing her child, going through that 18-day period of rollercoaster emotion, not knowing what's going on? You're posing the question, but I'd like to know your answer to it. Well, you see, that's where HISA steps in. But we're telling you HISA is not controlling. So if you're the district court judge, how would you do it in a way that she didn't do it, that you would argue? She needs to talk about what she considered. In every case, every jury verdict, she breaks down past damages, future damages, pain and suffering damages, lost wages damages. There are categories of damages, and you have to come to some kind of an award using a logical process. Now, HISA is one process. HISA, Judge Lambert looked at literally, well, when he looked at it, he looked at a handful of cases. But what we've had now following HISA, especially with the Peterson case, there are literally hundreds of cases, 65 death cases, in which there are multiple plaintiffs. Some of them, the Peterson case has hundreds of plaintiffs in it. He came up with a way of approximating those very hard-to-quantify damages. If you're not going to follow HISA, you still have to look at the damages and evaluate them, not just say, I give $3.1 million to all these plaintiffs. Judge Collier didn't even differentiate in her initial decision between the mother and the children. She just gave a lump sum to all of them. So you are correct, Judge Edwards. It's a difficult process to go through because solatium – Difficult. I mean, it doesn't tell you anything in terms of calculation. I'm sorry? It doesn't tell you anything in terms of how to calculate the damages. I mean, she can say, yes, the pain and suffering for the half hour that this poor child, that was terrible, and so is the state. You know, we can do that, and then we do this, and then we consider this. But that doesn't tell you anything about how you get to a number, how you translate that into a monetary amount. You're correct. That's what was confronting Judge Lamberth when he wrote the HISA decision. When you take a look at this case – this case is interesting because it has phases with different kinds of damages. When the Frankles were told that Naftali was kidnapped, and then for 18 days there was a search, and the whole country of Israel was involved. I mean, this was an amazing thing. I don't know if you're aware of this. When this was going on, this was an international event. There were kids in Jewish schools in the United States were gathering for prayer rallies for these three teenagers who were kidnapped. My own children were coming home with their pictures. I remember it vividly. And there were ups and downs. They thought they had a clue. There was no clue. They had a recording of the 911 call. Then they heard gunshots. You don't know, are they alive or are they dead? Maybe they were just wounded. Then you have to fear. Maybe they're wounded and not getting medical care. What's going to be with them? Imagine being a parent in that situation. That is one period of time for which a certain amount of damages needs to be awarded. Then there's the period of time from when the bodies were discovered, eaten by animals in a shallow grave, to the funeral, 100,000 people at the funeral, prime minister speaking at the funeral, the mourning period. That is a period of time with another type of damages. Then you have the period after that up to the time of trial, and from the time of trial for the rest of their life. So, Judge Edwards, if I were the judge, and I for some reason didn't want to follow Heizer, I would look at each of those periods, and it would be a torture to figure out how you come to a number for each of those phases of time. But you would have to struggle with that. Just in one sentence of the decision, throwing a number out without any analysis about how you reached it, number one, makes it unreviewable. I don't know how you review it. You don't know what the judge's thought process was. She made a decision that she wanted to disregard Heizer or not follow Heizer. I think you've made that point sufficiently clear. So, you're out of time. We'll give you back a couple of minutes on rebuttal after we hear from Amanda. Thank you. Good morning, Your Honor. Erica Hashimoto, court-appointed amicus. And with the court's permission, Harry Phillips, a third-year law student, will be arguing this case.  Good morning, Mr. Phillips. May it please the court. This appeal is about a damages judgment, and the standard of review for a damages judgment is abuse of discretion, a standard whose hallmark is deference to the district court. Now, of course, a legal error is per se an abuse of discretion, and as we understand the plaintiff's arguments, they allege two primary legal errors in this case. The first is they claim that the district court employed an improper methodology by not applying the Heizer presumptions in calculating salation damages, and they claim that it was improper for the district court to consider the history of violence against Israelis near Al-Anshavut when assessing those damages. And I want to get to each point in turn, but just while we're on the standard of review. Well, there's another aspect to it, that he was murdered not because he was an American. The district judge mentioned that, and they claim that was an error. Right. So the district court took into account the history of past terror attacks in Gush Etzion area near Al-Anshavut, and the citizenship of the victim because those facts- What's the citizenship of the victim have to do with anything? Well, so in a district court's reading, the fact that there had been- It has something to do with whether the estate could recover under the Sovereign Immunities Act. I agree with that, but does it have anything to do with the relatives who were American citizens? In the district court's analysis, the citizenship of the- was relevant to the relative unexpectedness of this attack compared with past attacks. And she relied on facts in the record for that conclusion, specifically the fact that there had been past attacks by Hamas near the Al-Anshavut junction. The fact that, and again, this is quoting the plaintiff's own expert, that Hamas was ceaselessly engaged in attacks on Jewish Israelis for the purpose of using a bargaining chip, and the fact, therefore, that because Naftali- And you all do a valiant job trying to rescue the expectedness analysis of the district court, but isn't it wrong? I mean, when we look at expectedness, it's supposed to be from the vantage point of the victim. And all the testimony here was, you know, what the experts expected, but not necessarily what the family expected. In fact, the evidence is that the family didn't expect something like this. They didn't live their lives in a way that they were expecting this. I agree that the right vantage point is the viewpoint of the family. When courts have considered expectedness in the past, that's what they've looked at. And the district court here didn't engage in that sort of inquiry at all, right? Well, not quite. I think the district court's use of the testimony of Mrs. Frankel hearing that the phone had been traced to Hebron and immediately thinking that it was therefore terrorism suggests that the terrorism here, this particular attack, was less unexpected than perhaps it might have been in other cases. That's a really tough argument to make, isn't it? That somehow that affects the level of suffering that a mother went through under these circumstances. No terrorist attack is to be expected, obviously. This is a heinous attack. The way we understand the district court's opinion in this regard is to say that when an attack is – and this is what other courts have said in past – the district courts, at least, have said in past cases is when an attack is completely out of the blue, completely unexpected, never possibly could have imagined that it would happen, that is a reason to increase damages because that can affect the anguish and grief that you feel. And our reading of the district court's opinion is that here, because of the history of violence in this specific area – Didn't the district court make a mistake in identifying the place of the kidnapping? The district court, in her opinion on reconsideration, did reference the incorrect junction when engaging in this analysis. And the actual correct junction, the only testimony or evidence about that was the mother who said it was safe. Rachel said that? So why isn't that – if it's – assume it's a proper factor. And, you know, I have my doubts about that. But even if you assume that, the district court made a mistake. He wasn't kidnapped at whatever that place was. He was kidnapped in another place. The two junctions are very near to one another. They're about a mile away. And so I'm not sure that the fact that – I'm not sure the district court's, you know, saying that the attack took place at Gush Etzion Junction, whereas in fact it took place at Alon Shevard Junction a mile down the road – But wasn't there evidence that they were very differently situated? That one was, in fact, had a history of no terrorism and the other was quite dangerous? And, in fact, that's why the boys walked from one area to another. I don't know if there's any evidence in the record which says that there's no terrorism at Alon Shevard. Not – much different level, though, correct? Right. The evidence about the two junctions that Judge Collier relied on that's in the record is that there were – had been previous attacks on Israelis by Hamas at the Gush Etzion Junction and that in general attacks by Hamas on Israelis were increasing in recent years. I don't know if there's anything specifically about the Alon Shevard Junction, which is a mile down the road and is in the general Gush Etzion area. But there might be, there might not. I don't believe – I don't know if those facts were in the record. What framework did the district court – in your mind, what framework did the district court follow? In calculating damages? Yeah. So the district court considered the – compared the facts of this case to the facts of Gates and decided that here a lesser award was warranted. That's – that is not an unusual way of calculating insulation damages. In fact, that's kind of what Heiser is. It's just comparing what a plaintiff has been awarded in the past with similar injuries to the current plaintiff and seeing if those same injuries warrant the same award. And in this case – Well, if the – I didn't mean to interrupt you. That's okay. Oh, sorry. On assumption of risk, how can you possibly conclude that the assumption of risk in Gates was less than here? We – I'm not sure that the district court was – I'm not sure assumption of risk is what the district court was actually doing here. So the analysis, the comparison to Gates, if you read the opinion of Gates, it's quite clear that Judge Collier is awarding more damages than she would otherwise have done because of this particularly gruesome facts of that case and the particularly shocking nature of the attack. She talks about how the cruel and calculated public manner added to the plaintiff's damages and malice and political objectives increased those damages. And so what she's saying is here there isn't the same – she wasn't reducing damages here because she was increasing them in Gates. She increased the damages in Gates because a factor was present. And here she found that there was no factors to reach the same level. Now, your reading is that she thought the level of cruelty was uniquely high in Gates. And what was the other thing you said? Well, I think that was one of the factors that was important in Gates. It was the cruelty of the attack, the public nature of the attack. The fact that in Gates – We got both of those so far. Where else? There was a video that some of the relatives – and what we're doing here is compensating relatives for their grief and distress, and some of the relatives have seen the video, and just the fact it was in general a very shocking attack. And as we read Gates, those were reasons for what was, in Judge Collier's opinion, an increased award. Even though it was less – I realize that's what she says, but just taking it on the record here, save for the absence of the video, the facts in this case seem no less horrendous than in Gates. In terms of the eyes of the victim, forget the video. Of course, if you're a parent, you have a mental video that will substitute for the public one. But there was certainly the publicity. It was horrendous, cruel. I mean, you're on the spot, but I'm just curious. You've looked at the record. Is there anything else? Were you really persuaded? That's not a fair question. Whether I'm persuaded or not, and whether this Court's persuaded or not by the analysis, isn't really the point here. No, I understand. That's not a fair question, but in reflecting on this side of the case, is it a fair distinction to present to this Court? Can you really distinguish it? What for the video? I mean, one of the distinctions that the District Court drew between this case and Gates was that in Gates, they were in a non-combat area, and they were in non-military roles. They weren't providing bodyguard services or anything like that, and there wasn't, I guess, the corresponding evidence that there is here of particular terror attacks in this area. But just, Judge Edgeworth, to your more broad general point, there are many facts. These cases are horrible. They have many facts that a court could take into account, and really the universe of facts that could be relevant to what we're doing here, which is measuring a plaintiff's mental distress, grief, is innumerable. And as long as the court took into account a fact that actually was relevant. Do you agree that if we read the District Court's opinion as using assumption of risk as a factor to weigh in to the damages remedy, that that is an error? Because I heard you make the argument, you were saying you don't really think assumption of risk was at work here. Let's say we disagree with you, and we think, no, she actually was using assumption of risk. That's error, that's abusive discretion. If the court read the District Court's opinion to say, I am reducing the Frankel's damages because the area was dangerous, or because he was an Israeli-American rather than a U.S.-born American, that would be an abusive discretion, because it is hard to understand how that factors in. Or how those two factors should come into play. Exactly, exactly. But if the District Court, sorry, if this court does not think that, thinks that that was a proper factor because it went to the unexpectedness of the attack, and therefore the measurement of damages relative to other attacks, then you're left with a naked claim of, assuming the height of it. It's true that the District Court didn't frame it that way, right? I mean, I don't recall her using the unexpectedness analysis the way that you are. Am I right? You're right. The District Court doesn't articulate the analysis in the exact same way as we are here. And, you know, it's not a model of clarity in how these facts are relevant to the Frankel's distress. And so, you know, if this court thinks that, you know, on the explanation, it's not clear how these facts are relevant, then the court could remand for more explanation. What is the case that requires, is there a case, that requires the District Court to explain the basis for damages of this type in this kind of a case? I don't think there is any case from this court that says that. And one thing I'll say is that the statute itself gives very broad discretion to the district. I mean, we haven't really talked about HISA. Our argument on HISA is that if, you know, we can understand the desire for consistency, but that's a decision for Congress to make. Congress has given district judges broad discretion to make what are highly subjective, individualized decisions as they would in any other kind of tort case. And to add, you know, if HISA were required, that would essentially add a statutory damages scheme to the statute that's just not there. And Congress could, Congress pays attention to these cases, has amended the statute in the past, and could do so here if it wanted to achieve consistency. Mr. Phillips, you a moment ago said to Judge Edwards that whether you were persuaded is really not relevant. That's not the point, right? Then why in your brief is there a statement that says that if you and your colleagues were the judges, you would have ordered more damages? Why is that even relevant or even proper in a brief? Our point was that, in making that statement, was that the decision of how much to award in insulation damages is a decision for the trial court, trial court judge, on frontline observation of the evidence. And whether, you know, reading the same record, considering the same facts, we would have considered different factors, weighed factors differently, assuming those factors are legally relevant, of course, and ultimately arrived at a different damages number isn't really the point because the district court is the one who is tasked with calculating the damages to award. And under the standard review that we're under, that's what's important here. So I see my time's expired, so I'll sit down if that's okay. Thank you. Thank you. Thank you very much. We'll be back in two minutes. A quick answer. The case that says that the judge has to explain her damages awards, there's three of them. They're on page 51 of my opening brief. You have APRIN, EUREKA, and SAFER. EUREKA, just picking the one that I happen to have right here, says the trial court, it is essential the trial court gives sufficient indication of how it computed the amounts so the reviewing court can determine whether it is supported by the record. That's this court, 1984. APRIN is later, but I don't have the year. Was EUREKA one of the – was that a foreign sovereign immunity case? I'm sorry, Judge, I didn't hear you. Was EUREKA a foreign sovereign immunity? No, it wasn't. But this is a procedural point that when the judge – Was it a case in which salatium, is that the way you pronounce it? Salatium. Was awarded? No, but it scarcely matters. It's a category of damages. I don't see why it should matter if it's lost wages or pain and suffering or salatium or loss of consortium. The point is that district courts' decisions are supposed to be reviewable. What differentiates these cases is that they're usually default judgments. That's true. They're not litigated. I only have a very short time. One of the members of the court asked about the framework that the judge – the district judge followed, and the answer was that she compared it to Gates. That actually only begs the question, well, what framework did she follow in Gates? And if you look at Gates, she did the same thing that she did in this case. She just throws a number out. She did not have a principled analytical method of reaching a number. She had the opportunity in this case to compare our facts to 64 other cases from the D.C. District Court involving debts under the FSIA case – under the FSIA, and she chose not to do that. I think unless there are further questions from my colleagues, we have your argument. Thank you very much. Mr. Phillips, you were appointed by the court to represent the district court's opinion in this case, and we thank you very much for your assistance. The case is submitted.
judges: Griffith, Edwards, Randolph